IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MICKEY C. WEBB, | ) |
| | ) No. CV 08-1067-HU |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) FINDINGS AND |
| MICHAEL J. ASTRUE, | ) RECOMMENDATION |
| Commissioner, Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

Linda Ziskin
PO Box 2237
Lake Oswego, Oregon 97035
    Attorney for plaintiff

Kent Robinson
Acting United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
Willy M. Le
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
    Attorneys for defendant

FINDINGS AND RECOMMENDATION Page 1

HUBEL, Magistrate Judge:

Mickey Webb brings this action pursuant to Section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for Disability Insurance benefits under Title II of the Social Security Act.

**Procedural Background**

Mr. Webb filed an application for benefits on July 18, 2000, with an alleged onset date of August 1, 1991.[1] Mr. Webb met the insured status requirements of the Social Security Act through September 30, 1997, so that the period under which his claim must be evaluated is May 1991-September 1997. His application was denied initially and upon reconsideration. Mr. Webb requested a hearing, which was held on January 14, 2002. Administrative Law Judge (ALJ) John Madden issued a decision on February 4, 2002, finding Mr. Webb not disabled. The ALJ's decision became the final decision of the Commissioner after the Appeals Council denied review.

Mr. Webb appealed to this court, which affirmed the Commissioner's decision on March 9, 2004. Webb v. Barnhart, Civ. No. 03-15-AA. Mr. Webb appealed, and the Court of Appeals for the Ninth Circuit handed down a published opinion remanding the case. Webb v. Barnhart, 433 F.3d 683 (9th Cir. 2005).

///

---

[1] Mr. Webb subsequently amended his alleged onset date to May 1991.

FINDINGS AND RECOMMENDATION Page 2

Upon remand, the claim returned to ALJ Madden, who conducted another hearing on December 6, 2006, and issued a new decision on February 16, 2007, again finding Mr. Webb not disabled. The ALJ noted in the decision that Mr. Webb had amended his alleged onset date to May 1, 1991. When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. This request for judicial review followed.

At the time of the ALJ's decision, Mr. Webb was a few days short of 55 years old. He has a college degree in business, and had previously worked as a retail manager. He has not engaged in substantial gainful activity since August 1991. Mr. Webb alleges disability based primarily on hypertension and degenerative disc disease of the thoracic and lumbar spine.

**Medical Evidence**

The medical records contain several significant gaps of time. All medical evidence in the record relevant to Mr. Webb's insured period, 1991-1997, is reviewed here.

On June 27, 1987, Mr. Webb was admitted to the hospital after an off-road vehicle accident. Tr. 165. He was diagnosed with multiple rib fractures, possible right facial bone fracture, and hematuria. Id.

On March 21, 1989, Mr. Webb was seen in the emergency room for weakness, shortness of breath, and numbness in the left arm. Tr. 166. Upon examination, he was found to have a blood pressure of 150/110; upon repetition, it was 160/110. Id. Mr. Webb said he had not had breakfast or lunch that day. The physician advised him to

FINDINGS AND RECOMMENDATION Page 3

return in a week for another blood pressure check, eat breakfast and lunch every day, and check his blood sugar. Id.

On February 19, 1990, Mr. Webb was seen for complaints about gastrointestinal discomfort. Tr. 258. The doctor thought he probably had mild costochondritis, as well as probable hypertension. Id. Mr. Webb was asked to get his blood pressure checked when possible and to continue with Metamucil. Id.

On August 21, 1990, Mr. Webb was seen for upper back pain, after moving concrete approximately six weeks before. Tr. 257. Examination showed some mild tenderness in the upper back, but no other significant changes. He was given Feldene. His blood pressure was still elevated. Id.

On January 3, 1991, Mr. Webb reported that he was feeling better, but that the day before he "had an episode for about 20 minutes where he couldn't recall names," had a headache, and a "fluttering sensation off the periphery of his right eye." Id. He checked his blood pressure and it was 174/110. Id. Examination showed elevated blood pressure. Id. On February 1, 1991, Mr. Webb reported that he was "feeling very well" after taking Tenax. Tr. 255. His blood pressure was found to be "much improved." Id.

On May 28, 1991, Mr. Webb again reported "generally feeling good," and his blood pressure remained under good control. Tr. 255. On October 22, 1991, Mr. Webb reported having "one of his visual episodes where part of his vision just blanks out for a short period of time." Id. His blood pressure was elevated, but examination of his eyes was unremarkable. Id. A CT scan of Mr.

FINDINGS AND RECOMMENDATION Page 4

Webb's head on October 22, 1991, was unremarkable, with no evidence seen of hypertensive bleed or other intraparenchymal abnormalities. Tr. 180.

On April 9, 1992, Mr. Webb was seen for a checkup, reporting that he had "generally been doing quite well with no problems with headaches or visual discomfort or TIA symptoms since his blood pressure has been under good control." Tr. 256. Mr. Webb said he had quit his job. Id.

On December 7, 1993, Mr. Webb was seen in the emergency room for a metallic foreign object in his eye, the result of working with a table saw. Tr. 172. The foreign body was removed. Id.

On October 27, 1994, Mr. Webb saw Robert Naymik, M.D., for lower back pain when raising his arms and stiffness in the arms. Tr. 187. Examination revealed stiffness to abduction in the right arm and tenderness to palpation of the biceps tendons. Right biceps reflex was somewhat blunted. Id. Dr. Naymik noted that Mr. Webb's hypertension was poorly controlled, and he was started on Dilacor. Mr. Webb was prescribed Relafen for the back pain. Id. Dr. Naymik discussed an MRI and/or a neurosurgical evaluation, but Mr. Webb said he wanted to think it over. Id.

On November 7, 1994, Mr. Webb saw Dr. Naymik, reporting that he was feeling better with regard to his upper extremity pain, his back pain and his blood pressure, but that he "now wants to deal with his low back pain." Tr. 186. Mr. Webb said his back "gives way" sometimes if he is standing in one place," and that occasionally he "just falls down." Id. He reported that Relafen did

FINDINGS AND RECOMMENDATION Page 5

not seem to be helping with the pain. Id. Upon examination, his blood pressure was much improved. Id. His back was straight to palpation. Deep tendon reflexes were symmetrical. Id. Straight leg raising was negative. Upper extremity left arm deep tendon reflexes were good. X-rays of the lower back showed disc space narrowing at L4-5.

On February 3, 1995, Mr. Webb was seen for complaints of severe non-radiating left mid-buttock pain. Tr. 184. Mr. Webb said the symptoms began one week earlier as he was helping a friend build garage doors. Id. Mr. Webb said he had similar symptoms a few months earlier when getting in and out of small cars. He also complained of chronic low back pain, but reported that his left shoulder, arm and mid-thoracic back pain were resolved. Id. Otherwise, Mr. Webb described his general health as good, and said he spent his days working around the house. Id. He also reported walking five miles twice a week. Id.

On April 29, 1996, Mr. Webb saw Dr. Naymik for blisters on his right hand from weeding and putting brakes on a car. Tr. 176. The blisters were positive for staph. Tr. 175. On May 29, 1996, Mr. Webb saw Dr. Naymik for left knee pain and swelling. Id. Fluid was withdrawn from the knee. Id. X-rays of the knee taken on May 31, 1996, showed minimal degenerative changes, both medially and laterally, and a large joint effusion. Tr. 178. On June 3, 1996, Mr. Webb reported that his knee was improved, but complained of back pain when reclining. A lumbar x-ray was within normal limits. Tr. 173-74.

FINDINGS AND RECOMMENDATION Page 6

On July 8, 1996, Mr. Webb was seen for complaints of back pain. Tr. 174. Dr. Naymik wrote that he had discontinued Mr. Webb's Dilacor for hypertension, and given him samples of Norvasc. Id. X-rays of Mr. Webb's lumbar spine were negative. Tr. 177, 173. A chart note dated July 17, 1996, showed blood pressure of 124/100 and notes that Mr. Webb "seems to be tolerating Norvasc pretty well," and that it seemed to be lowering his blood pressure adequately. Tr. 173. The note also stated that Mr. Webb's "arthritis generally is controlled and improving," although he still had back pain which was controlled by Relafen. Id. Dr. Naymik thought the back pain was "presumably muscular ligamentous [sic] in origin." Tr. 173.

On November 15, 1996, Mr. Webb was seen for abdominal cramping which appeared to be an episode of diverticulitis. Tr. 173. Mr. Webb cancelled a follow-up appointment, saying he was feeling better and didn't need it. Tr. 173. There are no medical records for the year 1997. Mr. Webb's insured status expired on September 30, 1997.

On January 14, 1998, chest x-rays were normal, with no active cardiopulmonary disease seen. Tr. 243. On January 27, 1998, an x-ray of the thoracic spine showed minimal degenerative changes. Tr. 241-42. An MRI of the thoracic spine on June 30, 1998, showed "very mild" posterior degenerative marginal osteophytes and disk bulge at T10-11, but no cord impingement, no central canal stenosis. Tr. 238. Remaining thoracic levels were negative, with the thoracic spinal cord appearing normal and the rest of the study negative.

FINDINGS AND RECOMMENDATION Page 7

Id. On July 13, 1998, Mr. Webb was given a treadmill test after complaints of bilateral aching in the forearms occurring at rest. Tr. 181. The examination was negative. Tr. 182.

**Hearing Testimony**

At the hearing, held in 2006, Mr. Webb's attorney moved to adopt Mr. Webb's earlier testimony, in January 2002, as well as his current testimony. Tr. 530-31.

At the first hearing, Mr. Webb testified that in 1982 or 1983, he stood up from a chair and "fell on my face;" ever since that time he has been unable to stand in one spot or sit on a soft couch or chair without having his back go out. Tr. 411-12. In January 1991, he was suddenly unable to remember his manager's name and was unable to recall certain other words and the names of fellow employees. Tr. 413. This was attributed to hypertension by his doctor, but the hypertension medication made him tired and weak. Tr. 413-14. He discontinued the blood pressure medication about three months after he quit his job, but in October 1991, he had "another episode with my vision and my memory" because his blood pressure got too high. Tr. 417. He restarted blood pressure medication, saying he had tried "probably ... 20 different medications over the years," but none had helped the feelings of fatigue and weakness. Tr. 418. Mr. Webb stated that when his blood pressure was high, he felt physically good, but if it got too high, he would lose his memory. Id.

Mr. Webb said his mid-back had hurt every day since the ATV accident, and that to limit the pain, he avoided bending over,

FINDINGS AND RECOMMENDATION Page 8

reaching, reaching overhead, and sitting. Tr. 420. He said, "I can't sit so I recline or I lay." Id.  However, he also testified that he gets his worst pain when he is lying down, and that the most comfortable positions for him were reclining and walking. Tr. 427. He then added that he used to walk, but lately did not feel like doing so. Id.

Mr. Webb said his arms hurt, with his left arm "bothering me badly in '98 ... when it got worse." Tr. 422. He was unable to say what kinds of activities would cause his arms to hurt, but said "a lot of times now the pain pill will hurt my left arm." Tr. 422.

His left knee hurts him when he is lying down, tr. 423, and in fact, "I basically hurt the worst when I lay down." Id., 427. His hands became weak when his blood pressure got too low. Id. Mr. Webb said he could not work because the only way he could stay awake was to drink a lot of caffeine, but "then I lose my memory." Tr. 426.

At the second hearing, Mr. Webb testified that when he was working, for about three months before he quit in August 1991, he took naps in the warehouse because the blood pressure pills made him sleepy. Tr. 547, 550. When he was working, the arm pain was "okay," and that it did not "disable me; it just aggravated me." Tr. 544. He testified that during the relevant time period, his back began to hurt after 30 minutes of sitting in a soft chair, so that he would have to get up and move around or lie down. Tr. 547. However, at that time, he was able to walk a couple of miles without his back hurting. Tr. 548.

Gary Hall, Mr. Webb's former supervisor at his last job,

FINDINGS AND RECOMMENDATION Page 9

testified at the second hearing that after the ATV accident, Mr. Webb became "more withdrawn" and that he was "not around as much," but that he was unaware Mr. Webb was taking naps in the warehouse. Tr. 554-56.

The ALJ called a vocational expert (VE), Lynn Jones. Tr. 567. On the basis of the VE's testimony, the ALJ concluded that Mr. Webb was able to return to his past relevant work as a retail manager.

**Standard**

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). However, the Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The initial burden of proving disability rests on the claimant. Meanel, 172 F.3d at 1113; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). To meet this burden, the claimant must

FINDINGS AND RECOMMENDATION Page 10

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant must establish that the current disability began on or before the date last insured. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1995); Flaten v. Secretary, 44 F.3d 1453, 1458 (9th Cir. 1995).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). This means an impairment must be medically determinable before it is considered disabling.

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the Commissioner goes to step two, to determine whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). That determination is governed by the "severity regulation," which provides:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are,

FINDINGS AND RECOMMENDATION Page 11

therefore, not disabled. We will not consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step. Yuckert, 482 U.S. at 141.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41. If a claimant's impairment meets or equals one of the listed impairments, he is considered disabled without consideration of her age, education or work experience. 20 C.F.R. s 404.1520(d), 416.920(d).

If the impairment is considered severe, but does not meet or equal a listed impairment, the Commissioner considers, at step four, whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can do so, he is not considered disabled. Yuckert, 482 U.S. at 141-42. If the claimant shows an inability to perform his past work, the burden shifts to the Commissioner to show, in step five, that the claimant has the residual functional capacity to do other work in consideration of the claimant's age, education and past work experience. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).

**ALJ's Decision**

The ALJ found that Mr. Webb had the "severe" impairments of

FINDINGS AND RECOMMENDATION Page 12

hypertension and minimal degenerative disc disease of the lumbar spine, but that he retained the residual functional capacity to sit, stand or walk for six hours in an eight hour day, and lift 50 pounds occasionally and 25 pounds frequently. Tr. 453. These are the exertional requirements for medium work.

The ALJ discounted Mr. Webb's testimony about back pain based on the following evidence: 1) unremarkable x-rays and MRIs of the cervical, thoracic and lumbar spine from 1987-1998, showing only very mild disc changes; 2) Dr. Naymik's note of July 17, 1996 that Mr. Webb's back pain was controlled with Relafen; 3) medical evidence indicating that Mr. Webb was physically active during his alleged period of disability, engaging in such activities as working with a table saw, building garage doors, weeding, digging, and installing brakes on a car; 4) Mr. Webb's report in 1999 that for the previous nine years he had performed household duties and car and house maintenance; 5) a third party report dated August 2000 indicating that Mr. Webb left home twice a day to shop or visit friends and that he walked three times a week, drove every day, attended movies twice a month, and laundered, dusted, vacuumed and removed trash twice a week and did yard work daily; 6) Dr. Goodwin's "unremarkable" neurological examination and spinal examination in 1999; and 7) chart notes recording that Mr. Webb sometimes complained of excruciating back pain and at other times said he was not experiencing back pain.

The ALJ found no objective clinical basis for Mr. Webb's complaints of arm pain and weakness, citing 1) Dr. O'Sullivan's

FINDINGS AND RECOMMENDATION Page 13

findings in 2001 that joint motion and motor strength were intact in all areas, including the arms, and that there were no reflex or sensory deficits; 2) Dr. O'Sullivan's notes finding no clinical explanation for Mr. Webb's complaints of arm pain and weakness based on MRIs, x-rays and an arterial ultrasound; and 3) the reports of Mr. Webb's daily activities described above.

With respect to the hypertension symptoms, such as memory loss, the ALJ referred to evidence showing 1) failures to follow up on the diagnosis of hypertension and, later, discontinuing his hypertension medications, despite Dr. Naymik's chart notes that Mr. Webb's blood pressure was improved, without side effects, when he used Norvasc; and 2) a normal CT scan of the brain.

**Discussion**

Mr. Webb asserts that the ALJ's credibility findings are erroneous because the Court of Appeals "expressly found Mr. Webb to be credible," Plaintiff's Opening Brief, p. 27, and "the ALJ must accept this." Id. at 28-29. He argues that the Court of Appeals refuted the ALJ's later characterization of the medical evidence and accepted Mr. Webb's testimony in the first hearing about medication intolerance. Id. at p. 27. He asserts that the Court of Appeals's statement that "no inconsistency between Webb's complaints and his doctors' diagnoses" would be sufficient to justify ending the inquiry at Step two, as the ALJ did in his first decision, precluded the ALJ from finding any such inconsistencies in his second decision. Id. In his reply brief, Mr. Webb asserts that the primary reason for reversing the Commissioner's decision

FINDINGS AND RECOMMENDATION Page 14

is that Mr. Webb has been found credible by the Court of Appeals, and that this constitutes the law of the case.

This argument is not persuasive. The Court of Appeals's holding in Webb was only that "the ALJ's reasons for rejecting Webb's complaints *at step two* are not substantial enough to meet the 'clear and convincing' standard when balanced against Webb's doctors' contemporaneous observations, some objective tests and Webb's subjective complaints," 433 F.3d at 687, and that "there is no inconsistency between Webb's complaints and his doctors' diagnoses sufficient to doom his claim as *groundless* under the *de minimis* standard of step two." Id. at 688 (emphasis added). The court clarified its holding by saying,

> We do not intimate that Webb will succeed in proving that he is disabled and entitled to disability insurance benefits. But we do hold that the ALJ lacked substantial evidence to find that the medical evidence clearly established Webb's lack of a medically severe impairment or combination of impairments. The ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that Webb's claim was 'groundless.'" [citation omitted]

Id. The Court of Appeals decision in Webb does not purport to make credibility findings in Mr. Webb's favor; it merely applies the rule that an impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on individual's ability to work. See, e.g., Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Step two is a "*de minimis* screening device used to dispose of groundless claims." Id., Under this standard, the Court of Appeals held that the medical evidence in the record did not "clearly establish" that Mr. Webb lacked "a medically severe

FINDINGS AND RECOMMENDATION Page 15

impairment or combination of impairments." Webb, 433 F.3d at 687, citing Social Security Ruling 85-28.

### 2. Failure to call medical expert

Mr. Webb also asserts that the ALJ erred by not calling an orthopedic medical expert at the hearing, thereby failing to develop the record, which resulted in an unfair hearing. However, the ALJ's duty to develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001), *as amended*, 276 F.3d 453 (9th Cir. 2002). The duty does not extend to a silent record that does not support disability. Armstrong v. Commissioner, 160 F.3d 587, 589 (9th Cir. 1998).

The medical evidence in this case was both unambiguous and adequate to allow for proper evaluation. Mr. Webb was given many diagnostic tests, all of which produced relatively benign results, and providing no objective evidence to substantiate Mr. Webb's subjective reports. I disagree with Mr. Webb that the ALJ's failure to call an orthopedic medical expert made his hearing inadequate or unfair.

### 3. Rejection of lay witness testimony and statement

Mr. Webb asserts that the ALJ improperly rejected the lay witness testimony of Gary Hall and an undated letter in the record from Chris Jacobsen, tr. 290, because the ALJ did not provide reasons germane to each witness. While lay witnesses are not competent to testify to medical diagnoses, Nguyen v. Chater, 100

FINDINGS AND RECOMMENDATION Page 16

F.3d 1462 (9th Cir. 1996), they may testify about a claimant's symptoms or how an impairment affects an ability to work; the ALJ cannot reject such testimony about symptoms unless he expressly determines to disregard such testimony, in which case he must give reasons germane to each witness. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

In Stout v. Commissioner, 454 F.3d 1050, 1056 (9th Cir. 2006), the court held that ALJ's failure to comment on competent lay testimony required reversal unless the court could "confidently conclude" that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.

With respect to Mr. Hall's testimony, Mr. Webb argues that the ALJ should have accepted as true Mr. Hall's statements that 1) there were long periods of time when Mr. Webb disappeared, 2) he later learned Mr. Webb was sleeping in the warehouse, 3) he would not hire someone who slept on the job, and 4) he noticed Mr. Webb declining over the years; had he done so, the evidence would support a finding of disability. I do not find this argument persuasive, because Mr. Hall's first three statements could apply equally to someone not disabled, and the fourth statement is too vague and inconclusive to require a conclusion that Mr. Webb was disabled during the period at issue.

Mr. Jacobsen wrote a "To Whom It May Concern" letter explaining that he was with Mr. Webb helping him to build a cabinet when a chip from his table saw flew into Mr. Webb's eye, and that on the occasion when Mr. Webb injured his hip, he did so by holding

FINDINGS AND RECOMMENDATION Page 17

a garage door up while Mr. Jacobsen installed a garage door opener. Tr. 290. Mr. Jacobsen added that he has known Mr. Webb for "approximately eighteen years," and has "seen his health dwindle over the years." Id. Again, the first two statements do not suggest disability, and the third statement suffers from the same vagueness and lack of specificity as Mr. Hall's. None of these statements, even if credited as true, supports a finding of disability on the record before the court.

I recommend that the Commissioner's decision be affirmed.

## Scheduling Order

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due December 16, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due December 30, 2009. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 1st day of December, 2009.

/s/  Dennis James Hubel

Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION Page 18